UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DEMARKO CARRINGTON SANDERS,<br><br>    Defendant. | Case No. 19-20191<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER ON DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE AND APPOINTMENT OF COUNSEL [55]**

Demarko Sanders wants out of prison. He has raised numerous issues and theories since being sentenced. The Court denied his previous motion for compassionate release and subsequent motion for reconsideration, and the Sixth Circuit affirmed. Sanders has now renewed his motion for compassionate release. He seeks to embellish the cause and consequences of his neck and back pain. The medical records, though, do not suggest that Sanders has any extraordinary and compelling medical conditions that would warrant a reduction of his sentence. The motion for compassionate release and motion to appoint counsel are DENIED.

I.

During the execution of a search warrant at his residence, Demarko Sanders threw a baggie of heroin as well as a semi-automatic 9mm pistol out of his bedroom window. (ECF No. 23, PageID.50–51.) The pistol had one round in the chamber and eight rounds in the magazine. (*Id.*) Other controlled substances and ammunition were

located in the residence. (*Id.* at PageID.51.) Sanders had numerous prior felony convictions, including for drug and gun offenses and fleeing police during a dangerous high-speed chase. (*Id.*; Presentence Report, ¶¶ 30–34.)

Sanders was charged and ultimately pled guilty to one count of being a felon in possession of a firearm. (ECF No. 23.) For sentencing purposes, Sanders admitted that he possessed the firearm in connection with another felony offense, i.e., possession with intent to distribute heroin. (*Id.*) Varying downward from a guidelines range of 77–96 months, the Court sentenced Sanders to 60 months of imprisonment and two years of supervised release on January 15, 2020. (ECF No. 32.) He has a projected release date in about two years, on April 19, 2024. (ECF No. 55, PageID.513; ECF No. 61-3.)

Sanders is presently serving his sentence at the Cumberland Federal Correctional Institution in Maryland. (*Id.* at PageID.515.) In January 2021, a year after his sentencing, Sanders moved to reduce his sentence because FCI Cumberland, in response to the COVID-19 pandemic, had instituted lockdowns and modified operations, resulting in limited access to medical treatment, educational services, rehabilitative programs, and family contacts. (ECF No. 38.) The Court ultimately construed Sanders' filing as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and denied it, concluding that Sanders had failed to establish extraordinary and compelling reasons for a sentence reduction. *United States v. Sanders*, No. 19-20191, 2021 WL 510195, at *3–4 (E.D. Mich. Feb. 11, 2021).

More specifically, the Court found that Sanders' age (33 years old), time served, and health conditions did not favor release. *Id.* at *4. The Court reviewed nearly 250 pages of Sanders' prison medical records that referenced chronic neck and shoulder pain from a 2017 motor vehicle accident. (ECF No. 41-1.) But there was nothing that would warrant release from prison. There was also nothing in the record that suggested Sanders' moderate asthma placed him at risk for serious illness should he get COVID-19. Sanders moved for reconsideration. (ECF No. 44.) It was denied. (ECF No. 45.)

Sanders then appealed to the Sixth Circuit. The Court noted that, "Sanders asserted that his moderate asthma and neurological conditions placed him at a greater risk of severe illness from COVID-19 and that his risk profile, the danger of infection at FCI Cumberland, and the rates of COVID-19 across the country constituted extraordinary and compelling reasons for his release." *United States v. Sanders*, No. 21-1509, 2022 U.S. App. LEXIS 1291, at * 7 (6th Cir. Jan. 18, 2022) (order). "But," the Court continued, "the district court had addressed these issues, and Sanders failed to identify any error in its prior ruling." *Id*. "Moreover," the Sixth Circuit added, "Sanders failed to provide additional medical records to support his claimed health conditions, and the medical records in the record indicated that Sanders was receiving appropriate treatment." *Id*.

Sanders now seeks compassionate release yet again. He focuses on the death of his mother and his spinal/cervical (i.e., neurological) injuries as the extraordinary and compelling reasons entitling him to this relief. The government opposes the

3

request. (ECF No. 59.) No timely reply has been received. The issues are still adequately briefed, and oral argument would not aid in their resolution. *See* E.D. Mich. LR 7.1(f).

## II.

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is compassionate release. The compassionate release statute allows the Court to reduce a defendant's sentence if it finds, after a defendant has exhausted his administrative rights, that "extraordinary and compelling reasons" warrant a reduction; that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and that the § 3553(a) factors, to the extent they apply, support a reduction. 18 U.S.C. § 3582(c)(1)(A). "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

### A.

The statutory exhaustion requirement is mandatory. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Sanders contends that he "moved to exhaust his administrative remedies." (ECF No. 55, PageID.513.) More than 30 days have passed, and it is unclear if the warden responded. Notably, the government does not contest exhaustion. (ECF No. 59, PageID.607.) So the Court will assume that Sanders satisfied the exhaustion requirement.

B.

Sanders must demonstrate "extraordinary and compelling reasons" to justify his early release.

As the Sixth Circuit observed, this Court has already addressed Sanders' neurological issues. The Court found Sanders' chronic neck and shoulder pain insufficient to warrant release. Sanders now suggests his injuries are far more serious. He says "[e]very M.R.I. shows [his] cervical C3-C5 neurological spinal respiratory injuries," and that "there is medical records that prove Sanders has severe respiratory injuries due from cervical trauma," and that "complete cord injury and partial cord injury of high cervical injury (at over above C-5) effects the muscles controlling respiration, causing respiratory insufficiency." (ECF No. 55, PageID.516.) Sanders further insinuates that these respiratory problems put him at greater risk during the coronavirus pandemic.

But if there are medical records to suggest Sanders' disc issues are so severe as to cause respiratory insufficiency, Sanders has not provided them. What records he did provide reveal a January 7, 2020, health care visit when he was in MDOC custody that included review of a lumbar spine exam from February 22, 2018. (ECF No. 55, PageID.537.) It is unclear whether this exam was an x-ray or an MRI. In any event, the findings of the 2018 exam were "mild muscle strain of the lumbar spine" and "no acute osseous or soft tissue abnormalities present." (*Id.* at PageID.538.)

Sanders was subsequently evaluated by Cumberland medical personnel in July, September, and October 2020, with no functional impairments or limitations

5

observed. (ECF No. 55, PageID.544.) But when Sanders' pain persisted, he had an x-ray of his cervical spine on October 16, 2020. (ECF No. 55, PageID.539.) It showed no evidence of fracture or malalignment. (*Id*.) It did reveal "mild to moderate degenerative disc with endplate change at C3-4 and C4-5" and "mild facet arthopathy at multiple levels in the cervical spine." (*Id*.; *see also* ECF No. 61-1, PageID.674.) But the study revealed nothing rising to the level of creating any respiratory issues, nothing that would make him any more vulnerable to severe illness from COVID-19, and nothing that is beyond the ability of the BOP to manage and treat. Indeed, the BOP medical records provided by the government for 2021 and 2022 confirm that Sanders was treated for an unspecified neck injury. (ECF Nos. 61-1, 61-2.) (They also reference x-ray findings of mild to moderate arthritis. (*Id*. at PageID.676.).)

The BOP medical records further reinforce the lack of any other extraordinary and compelling medical issues that would warrant a reduction in Sanders' sentence. The facility is monitoring Sanders' blood pressure, and the records do not reveal a diagnosis of asthma or hypertension. (ECF Nos. 61-1, 61-2.) In late November 2021, Sanders twisted his right knee after jumping out of his bunk. (ECF No. 61-1, PageID.651, 661.) He had surgery a little more than one month later. (*Id*. at PageID.633.) Sanders received appropriate medical treatment, follow-up care, and medications. (ECF Nos. 61-1, 61-2.)

Perhaps most significant, Sanders has protection from serious illness from COVID-19 by virtue of being vaccinated. (ECF No. 61-1, PageID.693, 720.) Indeed, the Sixth Circuit has held that "a defendant's incarceration during the COVID-19

6

pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction" even when the defendant has "underlying medical conditions coupled with the risk of contracting COVID-19." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)); *see also United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (holding the same for a prisoner who has been vaccinated). Thus, Sanders has no extraordinary or compelling medical reason that warrants compassionate release.

The other reasons raised by Sanders also do not justify reducing his sentence by 40%.[1] The death of his mother is very sad and undoubtedly devastating. But the loss of a cherished loved one is an unfortunate life circumstance for everyone, including many inmates. "Unfortunately, being separated from family members and the related hardship are common consequences of a term of imprisonment." *United States v. Chudley*, No. 14-CR-17, 2022 U.S. Dist. LEXIS 1057, at *6 (E.D. Tenn. Jan. 4, 2022). It is not an extraordinary and compelling reason to end a prison sentence. *Id.* (finding "[i]t is neither extraordinary nor compelling for a prisoner to be incarcerated while a close family member is sick or dying"); *see also United States v. Tillman*, No. 20-3664, 2021 U.S. App. LEXIS 5333, at *5–6 (6th Cir. Feb. 22, 2021)

---

[1] Many of the issues raised in Sanders' supplemental filing have already been addressed in connection with his initial motion for compassionate release and motion for reconsideration. The Court stands by its prior rulings and will not address these issues again. Also, Sanders' challenges to the calculation of his criminal history scoring and his sentence are not appropriately raised in a motion for compassionate release, especially where he waived any right to challenge his below-guidelines sentence. (ECF No. 23, PageID.56.)

7

(defendant's girlfriend's continuing struggle with the loss of their child a few years earlier was not the type of extraordinary and compelling circumstance that would warrant release); *United States v. Green*, No. 7-20411, 2021 U.S. Dist. LEXIS 162022, 2021 WL 3782691, at *2 (E.D. Mich. Aug. 26, 2021) (finding mother's poor health did not present extraordinary or compelling circumstances even when combined with defendant's rehabilitative efforts).

Additionally, Sanders once again raises his rehabilitative efforts. He has a supportive aunt who also provided some information about Sanders' education and vocational pursuits while incarcerated. (ECF No. 63.) As it did before, the Court commends Sanders and reiterates that his efforts "will undoubtedly serve him well when he is released." (ECF No. 45, PageID.480.) But the reported conduct, which is expected of all defendants, does not rise to the level of "extraordinary and compelling."

## C.

Thus, finding no extraordinary and compelling reason to reduce Sanders' sentence, the Court is not obliged to address the section 3553(a) sentencing factors. But once again, the government makes a compelling argument that compassionate release would not be appropriate under an analysis of those factors. (ECF No. 59, PageID.621–623.) Sanders threw heroin and a loaded firearm out of a window. In addition to the dangerous situation that those actions created, Sanders was not supposed to have a firearm in the first place. He has several prior felony convictions, including for drug and gun offenses and fleeing from police. (Presentence Report ¶¶ 28–37.) He also has a history of probation and parole violations. (*Id*. at ¶¶ 30, 34, 39.)

8

Sanders has not yet completed a number of BOP programs to reduce recidivism and remains assessed a high risk for recidivism. (ECF No. 61-3, PageID.771.) To end his below guidelines sentence now would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, or provide Sanders with the most effective treatment and training. 18 U.S.C. § 3553(a).

### III.

Thus, for the reasons stated, Sanders' motion for appointment of counsel and supplemental briefing to petition for compassionate release is DENIED.

IT IS SO ORDERED.

Dated: May 10, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
